UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

TIMOTHY KYLES,
  Plaintiff,

 vs.                            No. 09-1084

JOSEPH MATHY, et.al.,
  Defendants

## SUMMARY JUDGEMENT ORDER

This cause is before the court for consideration of Defendant Mahone's Motion for Summary Judgement [d/e 44] and Defendants Baughman, Griswold, Hardy, Kennell, Mathy and Runyon's Motion for Summary Judgement. [d/e 75]

Defendant Mahone has filed a motion to supplement her motion for summary judgement based on failure to exhaust. [d/e 56]   The defendant says the plaintiff's subsequent discovery responses provide additional relevant evidence.  The motion is granted.   Defendant Mahone has also filed a motion to correct her Motion for Summary Judgement. [d/e 67]  The motion pertains to exhaustion of administrative remedies, but the defendant inadvertently made reference to the wrong medical condition (Hepatitis C) in the body of her motion.  The motion to correct is granted.   The plaintiff's motion for additional time to file a response to the dispositive motion is granted [d/e 59] and the court notes that the plaintiff has now filed several responses.

### I.  BACKGROUND

The pro se plaintiff filed this lawsuit pursuant to 42 U.S.C. §1983 against seven defendants at the Pontiac Correctional Center including: Warden Joseph Mathy, Assistant Warden Marcus Hardy, Chaplain Eldon Kennell, Food Service Manager Richard Runyon, Food Supervisor Chris Baughman, Food Service Administrator Suzanne Griswold and Medical Director Sylvia Mahone.

After merit review of the complaint pursuant to 28 U.S.C. §1915A, the court found that the plaintiff had the following surviving claims:

> 1) Defendants Mathy, Hardy, Kennell, Runyon, Baughman and Griswold violated the plaintiff's First Amendment right to the free exercise of his religion when he was denied his approved religious diet;
> 2) Defendants Mathy, Hardy, Kennell, Runyon, Baughman and Griswold violated the Religious Land Use and Institutionalized Persons Act when the plaintiff was denied an approved religious diet;

3) Defendants Mathy, Hardy, Kennell, Runyon, Baughman and Griswold violated the plaintiff's Eighth Amendment rights when the plaintiff was not provided a nutritionally adequate diet for approximately 39 days which resulted in health problems and weight loss; and,

4) Defendant Mahone violated the plaintiff's Eighth Amendment rights when she was deliberately indifferent to the plaintiff's serious medical condition.

## II. FACTS

The plaintiff did not directly respond to the defendants' statement of undisputed facts. Therefore, the following facts are taking form the exhibits submitted by the parties:

The Illinois Department of Correction's Grievance Procedures For Offenders states that the grievance officer must consider the inmate's grievance and report his findings and recommendations to the Warden. The Warden "shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(d)

On September 22, 2008, the plaintiff submitted a grievance concerning his diet. The plaintiff said when he was transferred to Pontiac Correctional Center he stopped receiving his approved religious diet. (Def. Mot, 9-22-08 Griev.) The plaintiff claimed he complained to Defendants Mathy, Hardy, Kennell, Runyon, his counselor and medical staff. The plaintiff further stated that he suffered massive weight loss as a result.

The plaintiff received a response from Counselor Guth on October 3, 2008 which stated that Chaplain Kennell had notified the dietary department to start issuing his religious diet.

On September 30, 2008, the plaintiff apparently submitted a second grievance concerning his diet. In this grievance, the plaintiff said he was not receiving his approved religious diet and although he had complained to various individuals, they had not done anything to correct the situation. The plaintiff received the same response on October 3, 2008, informing him that his diet had been approved. (Def. Memo, 9-30-08 Griev).

The plaintiff did not receive a response from the grievance officer. On November 30, 2008, the plaintiff sent a letter to Counselor Guth stating that he had received his response, but had still not received anything from the grievance officer. The plaintiff said he had written to the grievance office with no response. The plaintiff asked Counselor Guth if he could help him find out what happened to his grievances. (Def. Mot, 11-30-08 ltr).

On December 1, 2008, Counselor Guth responded that he was not the grievance officer, so he suggested that the plaintiff write directly to the grievance officer with his concerns. (Def. Mot, 12-1-08 ltr).

On January 7, 2009, the plaintiff wrote a letter to the Records Office again stating that he had not received a response from the grievance officer. (Def. Mot, 1-7-09 ltr) At the bottom of his letter, the plaintiff received a handwritten response which confirmed there was no answer to his grievance on file.

Around January 9, 2009, the plaintiff submitted his grievances to the ARB. The plaintiff included a letter stating that he could not get a response to his grievances at Pontiac Correctional Center. (Def. Mot, 1-9-08 ltr). On January 21, 2009, the plaintiff received a response from ARB Chairperson Sherry Benton. The form indicated that the grievances were missing the grievance officer's response and the Chief Administrative Officer's response. (Def. Memo, 1-21-09 ltr). It also indicated the grievances were misdirected and the plaintiff should contact his grievance officer for an update on the grievances he had filed. The plaintiff was further informed that his grievance was submitted outside the required time frame. Finally, Benton wrote at the bottom of the form that it appears the plaintiff had received the requested vegan diet.

On February 10, 2009, Grievance Officer Patrick Hastings responded to the plaintiff's grievance. He found the issue moot since the Chaplain had indicated that he was asking the Dietary Unit to start issuing the plaintiff his religious diet. (Def. Memo, Ex. B) Warden Joseph Mathy signed off on the grievance on February 17, 2009.

Grievance Officer Patrick Hastings says he has worked at Pontiac Correctional Center for 20 years. During that time he was a grievance counselor for 15 years and a grievance officer for 5 years. (Def. Reply, Hastings Aff., p. 1) Hastings says part of his job involves responding to inmate grievances. "In an average week, I can respond to around 40 inmate grievances. In 2009, I personally responded to 830 out of the 2141 grievances processed at the Pontiac Correctional Center." (Def. Reply, Hastings Aff., p. 1) Hastings says normally two staff members are assigned to process grievances, but during much of 2008 and 2009, Hastings says he was the only staff member assigned to the Grievance Office on a full time basis in addition to his other duties. Therefore, Hastings says there was sometimes a backlog in grievances that required responses. (Def. Reply, Hastings Aff., p. 1)

III. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56c. Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

## IV. ANALYSIS

The Defendants argue that the plaintiff failed to exhaust his administrative remedies for the claims in his complaint. In addition, Defendants Mahone, Griswold and Baughman claim they are not properly named in the plaintiff's grievances. The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. §1997e(a).

The purpose of the exhaustion requirement is to allow prison officials the time and opportunity to respond to complaints internally before an inmate starts litigation. *Smith v Zachary,* 255 F.3d 446, 450-51 (7th Cir. 2001). The Seventh Circuit has taken a strict compliance approach to exhaustion requiring a prisoner to pursue all available administrative remedies and comply with the prison's procedural rules and deadlines. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir.2002)

> If an inmate fails to follow the grievance procedure rules, his claims will not be considered to be exhausted, but instead forfeited, and he will be barred from filing suit in federal court even if administrative remedies are for practical purposes no longer available to him due to his procedural default. *Pozo,* 286 F.3d at 1025.

The Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e et seq. ("the PLRA"), does not define "availability" for purposes of the exhaustion requirement. Nonetheless, it is clear that a plaintiff's claims cannot be dismissed if "prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809-10 (7th Cir.2006).

The defendants argue that the plaintiff did not properly exhaust his administrative remedies because he did not wait for a grievance officer's response before submitting his grievance to the Administrative Review Board. Instead, the plaintiff sent his grievance to the ARB before the officer had responded. The defendants acknowledge that the grievance officer did not respond within two months, but they argue that the "Administrative Code does not allow the plaintiff to circumvent the appropriate rules just because the 2 month recommended time frame has expired. If Plaintiff had waited a few more weeks he would have had the response required for an appeal..." (Def. Mot, p. 6).

The court notes that the administrative rules set a two month deadline for a response "where reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(d) However, the defendants do not explain how this rule envisioned the lengthy delay in this case. The plaintiff was forced to wait nearly five months for a response to his grievance.

During that time, the plaintiff sent several letters alerting officials that he had not received a response from the grievance officer. No response from prison officials explained that an answer was forthcoming. In addition, when the plaintiff did send his grievance to the ARB in January of 2009, the response was far from clear in its meaning. The ARB letter DID indicate that the plaintiff should contact his grievance officer. However, the plaintiff had already attempted to make this contact with no result. The ARB letter also told the plaintiff his grievance was now "untimely" and had not been submitted in the proper time frame. Why would the plaintiff believe that resubmitting his grievance with the February 2009 response from the grievance officer and warden would cure this deficiency?

The court appreciates that the grievance officer was attempting to wade through a river of grievances without assistance. Nonetheless, the defendants cannot ask the court to hold the plaintiff to a strict standard while asking the court to find that the nearly five month delay was reasonable for the defendants.

The court finds that the defendants' misconduct prevented the plaintiff from exhausting his administrative remedies. The delay was extensive, no one properly responded to the plaintiff's letters questioning the delay and the response from the ARB was misleading.

The next question before the court is whether the plaintiff properly identified the defendants in his grievances. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is

the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v Bock,* 549 U.S. 199, 218 (2007). The grievance procedure applicable to the Illinois Department of Corrections is set forth under Title 20 of the Illinois Administrative Code, Sections 504.800-504.850.

> The grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of the individual are not know, but the offender must include as much descriptive information about the individual as possible. 20 Ill.Admin.Code §504.810(b).

The defendants argue that the plaintiff makes no mention of Defendants Suzanne Griswold or Chris Baughman in his grievances. The plaintiff agrees and asks the court to dismiss these individuals. (Plain. Resp.,p. 5). Therefore, the court will grant the motion for summary judgement as to Defendants Griswold and Baughman.

The plaintiff makes no specific mention of Medical Director Mahone, but in his September 22, 2008, the plaintiff says he complained about his dietary troubles to several named defendants as well as medical staff. The plaintiff also reported that he was suffering from a massive weight loss as a result of his dietary problems. Defendant Mahone is the medical director and is in charge of the medical unit at Pontiac Correctional Center. Defendant Mahone would be responsible for responding to any letters sent to the medical department. While a closer call, the court finds the grievance was sufficient to alert the prison that plaintiff was complaining about a lack of appropriate medical care even thought Dr. Mahone was not specifically named. *See Gregory v. Santos,* 2010 WL 750047 at 5 (S.D. Ill., January 19, 2010)

The court also notes that Defendant Mahone argues that the plaintiff never intended to sue her since she is not named in the original complaint or the plaintiff's proposed amended complaint. The defendant claims the court "*sua sponte*" added her to the case. (Def. Reply, p. 2) The defendant is mistaken. The plaintiff clearly identifies Defendant Mahone in the caption of his original complaint and in the list of defendants. (Comp,p. 1, 3) In addition, the plaintiff devotes a paragraph of his complaint to Defendant Mahone stating that the defendant refused him medical care despite request for medical care and letters. The plaintiff repeats the same allegations in his proposed amended complaint. [d/e 50, p. 1, 5, 7]

**IT IS THEREFORE ORDERED that:**

**1) Defendant Mahone's motion to supplement her motion for summary judgement based on failure to exhaust administrative remedies is granted. [d/e 56]**

**2) Defendant Mahone's motion to correct her Motion for Summary Judgement is granted. [d/e 67]**

**3) The plaintiff's motion for an extension of time to file a response to the dispostive motion is granted. [d/e 59]   The court notes the plaintiff has now filed several responses for the court's consideration**

**4) Defendant Mahone's motion for summary judgement is denied. [d/e 44]**

**5) Defendants Baughman, Griswold, Hardy, Kennell, Mathy and Runyon's motion for summary judgement is granted in part and denied in part. [d/e 75].   The motion for summary judgement is denied as to Defendants Hardy, Kennell,  Mathy and Runyon.  The motion for summary judgement is granted as to Defendants Baughman and Griswold.   The clerk of the court is directed to dismiss Defendants Baughman
and Griswold since the plaintiff failed to exhaust his administrative remedies for claims against these individuals.**

**6) Defendant Mahone's motion for a hearing on the issue of exhaustion is denied as unnecessary and moot. [d/e 73]**

**7) The defendants motion to stay discovery is also denied as moot. [d/e 78]**

Entered this 2nd day of August, 2010.


\s\Harold A. Baker

_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE