UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

TIMOTHY KYLES,
   Plaintiff,

 vs.                                                  No. 09-1084

JOSEPH MATHY, et.al.,
   Defendants

## SUMMARY JUDGMENT ORDER

This cause is before the court for consideration of various pending motions including: Defendant Mahone's second motion for summary judgment [d/e 100]; the Plaintiff's motion for summary judgment [d/e 124]; the Plaintiff's renewed motion for appointment of counsel [d/e 128]; and Defendants Hardy, Kennell, Mathy, Randle, Runyon, and Walker's motion for summary judgment. [d/e 130]

### I.  BACKGROUND

The pro se Plaintiff has filed this lawsuit pursuant to 42 U.S.C. §1983 against nine Defendants at the Pontiac Correctional Center including: Warden Joseph Mathy, Assistant Warden Marcus Hardy, Chaplain Eldon Kennell, Food Service Manager Richard Runyon, Food Supervisor Chris Baughman, Food Service Administrator Suzanne Griswold, Medical Director Sylvia Mahone and Illinois Department of Corrections (herein IDOC) Directors Roger Walker and Michael Randle.. *See* August 2, 2010 Case Management Order.  On August 2, 2010, the court denied Defendant Mahone's first motion for summary judgment and granted Defendant Baughman and Griswold's motion for summary judgment based on the issue of exhaustion of administrative remedies. August 2, 2010 Summary Judgment Order.

The Plaintiff now has the following surviving claims:

1) Defendants Mathy, Hardy, Kennell, Runyon, Walker and Randle violated the Plaintiff's First Amendment right to the free exercise of his religion when he was denied his religious diet for 39 days;
2) Defendants Mathy, Hardy, Kennell, Runyon, Walker and Randle violated the Religious Land Use and Institutionalized Persons Act (herein RLUIPA) when the Plaintiff was denied his religious diet for 39 days;
3) Defendants Mathy, Hardy, Kennell and Runyon violated the plaintiff's Eighth Amendment rights when the Plaintiff was not provided a nutritionally adequate diet for 39 days which resulted in health problems and weight loss; and,
4) Defendant Mahone violated the Plaintiff's Eighth Amendment rights when she was

1

deliberately indifferent to the Plaintiff's serious medical condition. *See* August 2, 2010 Case Management Order; *see also* April 15, 2009 Merit Review Order.

All parties have now filed motions for summary judgment. The court notes that the Plaintiff has also filed a renewed motion for appointment of counsel. [d/e 128] The Plaintiff states that on August 2, 2010, the court allowed his motion to amend his complaint to add two Defendants: Illinois Department of Corrections Directors Michael Randle and Roger Walker. *See* August 2, 2010 Case Management Order. The court found that the Plaintiff had stated an official capacity claim against these individuals. The Plaintiff says that based on this amendment, his case is now too complex and he needs the assistance of counsel.

As the court has previously explained, the Plaintiff has no constitutional or statutory right to appointment of counsel in this case. *See* April 15, 2009 Merit Review Order. In considering the Plaintiff's motion, the court asks: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007), *citing Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir.1993).

The court finds that the Plaintiff is competent to represent himself based on his filings in this case. The Plaintiff has filed an appropriate motion for default judgment (October 7, 2009 Text Order); survived a motion for summary judgment (August 2, 2010 summary judgment motion); successfully amended his complaint (August 2, 2010 case management order); successfully filed a motion to compel discovery (August 2, 2010 case management order); and, filed his own motion for summary judgment order complete with a statement of undisputed facts and exhibits. [d/e 124]. The Plaintiff's filings show an understanding of the applicable law and how it applies to the facts of his case. In addition, the Plaintiff is an experienced litigator. *See Fletcher, et.al. v. Mathy*, Case No. 09-1024, multi-plaintiff action in the Central District of Illinois; and *Kyles v Fairman*, Case No. 95-6110; *Kyles v. Howell*, Case No. 95-4963; *Kyles v Carry*, Case No. 95-6430 and *Kyles v. U.S. States Attorney*, Case No. 97-5516 in the Northern District of Illinois. The renewed motion for appointment of counsel is denied. [d/e 128].

## II. FACTS

The Plaintiff transferred from Stateville Correctional Center to Pontiac Correctional Center on August 18, 2008. The Plaintiff says he affiliated with the religious group "African Hebrew Israelites" during his time at Stateville. (Def. Mot, Ex. 4, Plain. Depo, p. 8). As a member of this group, the Plaintiff says he is prohibited from eating meat or meat products. (Def. Mot, Ex. 4, Plain. Depo, p. 28).

The Plaintiff says he signed a Religious Diet Agreement at Stateville that was approved by the Chaplaincy staff. The Plaintiff has provided a copy of his religious designation, "African Hebrew Israelite," and a copy of his religious diet agreement for a vegan diet. (Plain. Mot, Ex. 1, 4). The Plaintiff claims the religious diet agreement is kept in his IDOC master file. (Plain. Mot, Ex. 4).

The Plaintiff says while he was provided vegan meals at Stateville Correctional Center, the vegan trays stopped when he entered Pontiac. The Plaintiff says he told Privacy Officer Jack Overfeld and Counselor Guth about his dietary request shortly after his arrival. (Def. Mot, Ex. 4, Plain. Depo, p. 13). In his deposition, the Plaintiff says he knew on August 26, 2008, that he would have to follow the same procedure to obtain a vegan diet at Pontiac that he had previously followed at Stateville. (Def. Mot, Ex. 4, Plain. Depo. p. 14-15).

The Plaintiff says he first sent a letter to Defendant Runyon and Chaplain Kennell on August 26, 2008, asking for a vegan diet. The Plaintiff has provided a copy of this letter which says that it is addressed to "Dietary (Richard Runyon)(Chaplain Eldon Kennell)." (Plain. Mot, Ex. B). In the letter, the Plaintiff states that he had received a vegan diet based on his religious beliefs at Stateville Correctional Center, but he has not been allowed the same diet at Pontiac. (Plain. Mot, Ex. B). The Plaintiff says he is not able to eat most of the items on a regular food tray and is losing weight. There is no stamp on the letter indicating it was received, and Defendants Runyon and Kennell claim they did not receive this letter.

The Plaintiff has also included a copy of two other letters he wrote on August 26, 2008 that include the same information. The Plaintiff claims he sent these letters to Defendants Hardy and Mathy. (Plain. Memo, Ex. C, D). There is no stamp on either letter indicating it was received and the Defendants say were never given the letters.

The next letter submitted by the Plaintiff is dated September 19, 2008 and is addressed to Defendant Kennel. (Plain. Mot, Ex. E). In the letter, the Plaintiff introduces himself and states that he has not received his "vegan Hebrew diet tray" since he arrived from Stateville Correctional Center. The Plaintiff further says he does not understand why he is not receiving the vegan diet since his Religious Diet Agreement was in his IDOC master file. The Plaintiff says he is requesting the vegan diet again. The Plaintiff says he has not been able to eat a full meal since he arrived at Pontiac Correctional Center and claims he has gone from 220 pounds to 190 pounds. (Plain. Memo, Ex. E). The Plaintiff also claims he previously wrote letters to Wardens Mathy and Hardy but did not receive responses. (Plain. Memo, Ex. E). The Plaintiff makes no mention of any prior letters to the Chaplain or the Dietary Department.

The Plaintiff has submitted two final letters, each dated September 22, 2008. One is addressed to Defendant Mathy and the other to Defendant Hardy. (Plain. Mot, Ex. F, G). Both are marked as received on January 13, 2009. The Plaintiff again states his need for a vegan diet and says he has written to these two individuals on one prior occasion. (Plain. Mot, Ex. F,G.)

On September 22, 2008, the Plaintiff also filed a grievance. (Plain. Mot, Ex. F). The Plaintiff says he has written to Defendants Mathy and Hardy on two occasions and still has not received his religious diet. The Plaintiff says he has suffered massive weight loss and is starving. He makes no mention of any letters to the Chaplain. (Plain. Mot, Ex. F). The response from the counselor on October 3, 2008, states that Chaplain Kennell has received the Plaintiff's letter and dietary has been notified to provide the Plaintiff with a vegan tray.

Eldon Kennell is the Chaplain at Pontiac Correctional Center and says he is familiar with the religious activities and rules at the correctional center. (Def. Memo, Kennell Aff., p. 1, d/e 127). Defendant Kennell says part of his duties include processing requests for religious-based special diets. He says all inmates who arrive at Pontiac are immediately placed on a standard diet, and the "[i]nmates are responsible for requesting alternative diets if they so chose." (Def. Memo, Kennell Aff., p. 1, d/e 127).

Defendant Kennell says when he receives a request for a religious-based diet, he keeps a copy and marks the date the request was received. The Defendant says if he approves the request, he sends a memorandum to the Dietary Manager and also forwards a copy of the request to the inmate's master file, the Assistant Warden of Operations and to the Assistant Warden of Programs. (Def. Memo, Kennell Aff., p. 1, d/e 127).

Defendant Kennell says according to his records, the first letter he received from the Plaintiff was dated September 19, 2008. However, Kennell says based on his notation he did not personally receive it until September 26, 2008. (Def. Memo, Kennell Aff., p. 1, d/e 127). The Defendant has attached a copy of the letter with his notation that it was received on September 26, 2008. (Def. Memo, Kennell Aff., Ex. 1, d/e 127).

Defendant Kennell says the Plaintiff's letter does not make reference to any previous attempts to contact him or Dietary Manager Richard Runyon. Kennell says after he received the September letter, he approved the Plaintiff's request and sent a memorandum to the Dietary Director asking for him to add the Plaintiff to the list of those receiving a vegan diet. (Def. Memo, Kennell Aff., p. 2, d/e 127). Kennell says the Offender Tracking System indicates that the Plaintiff began receiving the vegan trays on the same day: September 26, 2008. *Id.* Defendant Kennell has also provided a copy of the Offender Tracking System record. (Def. Memo, Kennell Aff. 3, d/e 127).

Dietary Manager Richard Runyon agrees that before he can provide a religious-based alternative diet to an inmate, that inmate must get approval from the Chaplin. Runyon also confirms that his records indicate he received a memorandum from the Chaplain concerning the Plaintiff on September 26, 2008, and the Plaintiff first received a vegan diet on this same day. (Def. Memo, Runyon Aff., Ex 2, d/e 127). The Plaintiff contends he did not receive a vegan food tray until October 3, 2008. (Def. Mot, Ex. 4, Plain. Depo, p. 16).

Defendant Sylvia Mahone is a licensed physician in the State of Illinois and has been employed by Wexford Health Sources, Inc. as the Medical Director at Pontiac Correctional Center since July of 2006. (Def. Mot, Ex. 3, Mahone Aff., p. 1). Dr. Mahone says she did receive one letter from the Plaintiff on September 22, 2008. The Doctor has provided a copy of the letter in which the Plaintiff again explains his problems receiving his religious, vegan diet. (Def. Mot, Ex. 1, p. 1). The Plaintiff says he is not on a hunger strike, he just refuses to eat a non-vegan diet, so he can only consume about "5% or less of a regular tray." (Plain. Mot, Ex. M). The Plaintiff asks Dr. Mahone for her help. The Plaintiff does not mention any specific

4

medical problem, nor does he say that he has lost weight. (Plain. Mot, Ex. M).

Dr. Mahone says she never personally saw or examined the Plaintiff regarding this complaint and there are no records suggesting that the Plaintiff was placed on sick call for any related issue. Dr. Mahone responded to the Plaintiff's letter on October 2, 2008 with a memorandum sent to both the Plaintiff and Chaplin Kennell. The Doctor has provided a copy of this response which informs the Plaintiff that his letter has been forwarded to the Chaplin. In addition, Dr. Mahone advised the Plaintiff:

> Medical concerns are to be directed to the cellhouse CMT who will evaluate you for treatment or refer you if appropriate. Alternatively, you may send a yellow "Medical Request" slip to the Health Care Administration requesting medical services. (Def. Mot, Ex. 2).

Dr. Mahone says she had no other contact or interaction with the Plaintiff either in person or by written correspondence on this issue. Dr. Mahone further states that she has no control over the type of food tray that is provided to an inmate based on religious beliefs. Dr. Mahone says these decisions are directed to the Chaplin of the facility and she has never intervened in an inmate's food request based on religious beliefs. Dr. Mahone says "[r]eligious diets are not medical issues." (Def. Mot, Ex. 3, Mahone Aff., p. 3). Instead, Dr. Mahone says she sometimes makes recommendations regarding specific nutritional needs. (Def. Mot, Ex. 3, Mahone Aff., p. 2). Dr. Mahone states that she was never advised, nor at any time did she believe that the Plaintiff suffered from a serious medical condition that placed him at risk of substantial harm. (Def. Mot, Ex. 3, Mahone Aff., p. 3)

In his deposition, the Plaintiff admits that this September 22, 2008 letter was the only letter he addressed to Dr. Mahone. (Def. Mot, Ex. 4, Plain. Depo, p. 17). The Plaintiff also admits he had no other personal contact with Dr. Mahone. (Def. Mot, Ex. 4, Plain. Depo, p. 17, 24). The Plaintiff says he knew Dr. Mahone was not part of the process at Pontiac Correctional Center in determining dietary religious accommodations, but he claims his reason for writing was to request medical care. (Def. Mot, Ex. 4, Plain. Depo, p. 16).

Lloyd Hanna is the Dietary Manager for Menard Correctional Center and also confirms that a religious-based vegan diet at his facility requires the approval of the Correctional Center Chaplain. Hanna says the Plaintiff was at Menard from July 2009 to August of 2010 and during that time, never received a vegan diet. (Def. Memo, Hanna Aff., Ex. 3, d/e 127) Hanna has also provided a copy of the Offender Tracking System which confirms the Plaintiff did not receive a religious-based vegan diet during this time. (Def. Memo, Hanna Aff., Ex. 3, d/e 127).

The Plaintiff has provided a copy of a grievance dated August 13, 2009 he filed at Menard Correctional Center stating that he has not received his religious diet. The response dated August 24, 2009 states that the Chaplain denied his request because the Plaintiff did not complete the necessary form. The Plaintiff was advised that he must complete the form before the diet would be approved. (Plain. Mot, Ex. N-4). There is no evidence before the court that the

5

Plaintiff ever resubmitted this form.

## III. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000). "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

In deciding the cross motions for summary judgment, the foregoing legal standard has been independently applied to each motion in context of the undisputed facts found by the Court as discussed *infra*. Granting summary judgment for one party does not necessarily warrant denial of summary judgment for the opposing party; but as in this case, that corollary consequence is typical.

## IV. ANALYSIS

A. DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL CONDITION.

Defendant Mahone states that she is entitled to summary judgment because the Plaintiff cannot demonstrate that she violated his constitutional rights. To establish a violation of the Eighth Amendment, the Plaintiff must pass a two prong test. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). The first prong of the test requires the Plaintiff to demonstrate that the alleged deprivation was sufficiently serious. *Farmer v Brennan,* 511 U.S. 825, 834 (1994). The Seventh Circuit has acknowledge that a "serious medical need" is far from "self-defining." *Gutierrez v Peters,* 11 F3d 1364, 1370 (7th Cir. 1997). However, the court noted that the Supreme Court clearly intended to include not only conditions that are life-threatening, but also those in which denial or delay in medical care results in needless pain and suffering. *Id.*

The second prong of the Eighth Amendment test requires the Plaintiff to show that the

defendants acted with deliberate indifference. *Farmer,* 511 U.S. at 828. "[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997)(citing *Farmer* at 840-42) Inadequate medical treatment due to negligence or even gross negligence does not support an Eighth Amendment violation. *Shockley v Jones*, 823 F.3d 1068, 1072 (7th Cir. 1987). In addition, inmates are not entitled to a specific type of treatment, or even the best care, only reasonable measures to prevent a substantial risk of serious harm. *Forbes v. Edgar,* 112 F.3d, 262, 267 (7th Cir. 1997).

Defendant Mahone first argues that the Plaintiff has not demonstrated that he suffered from a serious medical condition. The Plaintiff alleges that after he transferred to Pontiac Correctional Center, he went without his vegan diet for 39 days. During that time, the Plaintiff claims he ate only portions of his food tray, and he lost weight and was hungry. The Defendants state that hunger is not a serious medical condition, and the Plaintiff has presented no evidence that he suffered from any other serious medical condition.

The Plaintiff counters that he suffered extreme weight loss during this time. As evidence, he has presented two documents. The first is dated February 11, 2008, from Stateville Correctional Center and it shows the Plaintiff weighed 206 pounds on that date. (Plain. Resp, Ex. 3). The second is dated May 18, 2009, from Pontiac Correctional Center. The Plaintiff went to the Health Care Unit complaining of back pain and it was noted that he weighed 176 pounds. (Plain. Resp., Ex. 4). While its clear the Plaintiff did lose weight, the entry was made approximately nine months after the Plaintiff entered Pontiac Correctional Center. In addition, the Plaintiff has previously stated that he gained back all of the weight he lost after he began receiving vegan food trays at Pontiac. (Def. Memo, Ex. 4., Plain. Depo. p. 16). Neither side has presented any evidence of the Plaintiff's weight when he entered Pontiac on August 18, 2008 or his weight approximately 39 days later. In addition, the Plaintiff has presented no other evidence of health problems related to the lack of a vegan diet.

Even if the Plaintiff could demonstrate that he suffered from a serious medical condition, Defendant Mahone argues that the Plaintiff has no evidence that she was deliberately indifferent to that condition. The Plaintiff says Defendant Mahone "denied medical treatment despite repeated letters, grievances and complaints with medical staff." (Plain. Resp, [d/e 110] p. 4). The only evidence the Plaintiff has that he specifically informed Defendant Mahone of his complaint is the letter he sent to her on September 22, 2008. The Plaintiff says he told the Defendant that he was writing to her to get the medical attention he needed. Nonetheless, the Plaintiff makes no reference to any specific weight loss or health problem.

Defendant Mahone immediately responded by telling the Plaintiff she had forwarded his letter concerning a vegan diet to the Chaplain because she could not approve a religious diet. She also told the Plaintiff the proper way to obtain medical care if needed.

The court notes that the Plaintiff has also presented a copy of a document entitled "Offender Authorization for Payment" dated September 22, 2008 in which the Plaintiff says he

7

needs care because of "rapid weight loss" (Plain. Resp., d/e 133, Ex. M). However, there is no evidence this document went to Defendant Mahone. In addition, the form is dated the same day the Plaintiff sent his letter to Defendant Mahone.

There is no evidence Defendant Mahone was deliberately indifferent and there is no evidence she knew the Plaintiff was suffering form a serious medical condition. The motion for summary judgment in favor of Defendant Mahone on this claim is granted. The Plaintiff's motion for summary judgment on this claim is denied.

B. CONDITIONS OF CONFINEMENT

The Plaintiff and Defendants Mathy, Hardy, Kennell and Runyon ask the court to grant summary judgment on the Plaintiff's claim involving the nutritional value of his food. The constitution requires that prison officials provide humane conditions of confinement, which include the basic necessities of life such as clothing, shelter, medical care, and food. *Farmer,* 511 U.S. at 832. Under the Eighth Amendment, "an inmate has no right to meals of the inmate's choosing, only a right to sufficiently nutritious food that is not contaminated or otherwise immediately dangerous to the inmate's health." *Warren v Peterson*, 2008 WL 4411566 at 3 (N.D.Ill. Sept. 25, 2008); *see also French v Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985). Therefore, a prison official can be liable for an insufficient diet if the prisoner shows he faced an objectively serious risk of harm and the official was deliberately indifferent to that risk. *Mays v Springborn*, 575 F.3d 643, 648 (7th Cir. 2009).

Forcing an inmate to make a choice between the right to exercise his religion and proper nutrition may state a First Amendment claim. *See Hunafa v. Murphy* , 907 F.2d 46, 47 (7th Cir. 1990) (recognizing that a prisoner can bring a free exercise claim where he is "put to an improper choice between adequate nutrition and observance of the tenet of his faith."). However, courts have found that *choosing* not to eat a meal that is nutritionally adequate because of a religious preference is not a violation of the Eighth Amendment. For instance, in *Powell v Raemisch*, 2010 WL 2429709 at 7 (W.D. Wis. June 11, 2009), a prisoner chose not to eat food that was provided because he wanted to maintain his fast for Ramadan. The Plaintiff did not claim the food was nutritionally inadequate, but rather that the menu did not meet his religious requirements.

> Because prison officials afforded plaintiff adequate nutrition, they cannot be
> said to have been deliberately indifferent to a risk of food deprivation when
> he decided on his own to forgo that nutrition for his religion. Forcing a prisoner
> to choose between nutrition and his religious beliefs does not violate the Eighth
> Amendment; therefore, plaintiff's Eighth Amendment claim will be dismissed.
> This conclusion does not mean prison officials can interfere with a prisoner's
> religious beliefs with impunity; only that the *Eighth Amendment* does not
> protect prisoners from such interferences, even when the interference causes
> the prisoner to make unhealthful choices to conform with his religion. *Id.*

8

*See also Campbell v Cornell Corrections of Rhode Island, Inc.*, 564 F.Supp.2d 99 (D.R.I. 2008) (prison's failure to serve inmate vegetarian diet consistent with his religious beliefs did not constitute Eighth Amendment violation absent claim that food was not nutritionally adequate); *See also Wallace v Miller*, 2010 WL 2836987 at 5 (S.D.Ill July 20, 2010)(Plaintiff lost tremendous amount of weight in short time after he refused to eat food that did not fit his faith requirements, but no evidence the weight loss was due to nutritional value of food).

In the case before the court, the Plaintiff has presented no evidence that he was provided with a nutritionally inadequate diet, only that the diet did not meet his religious requirements. This is not an Eighth Amendment violation and the Defendants' motion for summary judgment on this claim is granted. The Plaintiff's motion for summary judgment on this claim is denied.

C. FIRST AMENDMENT

The Plaintiff and Defendants Mathy, Hardy, Kennell, Runyon, Walker and Randle also ask the court to grant summary judgment on the Plaintiff's claim that his First Amendment right to the free exercise of his religion was violated when he was denied his religious diet for 39 days. Prisoners have constitutionally protected rights to the free exercise of their religion while they are incarcerated. *Cruz v Beto*, 405 U.S. 319 (1972). However, due to the many exigencies of running a prison, those rights may sometimes be limited to the extent that they interfere with or compromise penological interests. *O'Lone v Estate of Shabazz*, 482 U.S. 342, 350-51 (1987).

To establish a constitutional violation, the prisoner must first show that the restriction substantially burdens the exercise of a constitutional right. *Nelson v Miller*, 570 F.3d 868, 877 (7th Cir. 2009). Such a burden exists when there is "'substantial pressure on an adherent to modify his behavior and violate his beliefs.'" *Koger v Bryan*, 523 F.3d 789, 799 (7th Cir. 2008 *quoting Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981). Once the prisoner makes this showing, the Court must then determine whether the restriction furthers or is reasonably related to legitimate penological interests. *Turner v. Aafley*, 482 U.S. 78, 89-91 (1987);*see also Reed v Faulkner*, 842 F,2d 960 (7th Cir. 1988)(a prisoner is entitled to practice religion so long as doing so does not "unduly burden" prison administration).

In this case, the parties disagree whether the requirement that the Plaintiff reapply for his religious diet after a transfer substantially burdened his First Amendment rights. The Defendants argue that the procedure to obtain a religious diet after a transfer is straightforward and once the Plaintiff followed it, he immediately received his requested religious diet. The Plaintiff maintains whenever an inmate is transferred, his medical file, master file and various other documents are also transferred. Therefore, the Plaintiff argues, there is no need to make a prisoner re-apply for his religious diet. The Plaintiff says making him wait 39 days was a substantial burden on his constitutional rights.

The Defendants have presented evidence that the Plaintiff was provided the administrative directives concerning the requirements for obtaining a religious diet and he knew those requirements prior to his transfer to Pontiac on August 18, 2008. Even if the Plaintiff did

9

not realize he had to reapply after a transfer, he admits he knew by August 26, 2008 that he had to follow these same directives at Pontiac. In addition, the Plaintiff admits he made no efforts to obtain a religious diet prior to August 26, 2008. (Def. Mot, Plain. Depo, p. 13-15). The Plaintiff started by writing letters to Defendants Mathy and Hardy. The Plaintiff says Warden Hardy was the Assistant Warden of Programs and was responsible for the day-to-day functions in the facility including the dietary department. The Plaintiff maintains that Hardy could have looked up his previous dietary approval and told the dietary department. The Plaintiff further says that Warden Mathy was Hardy's boss and also could have taken action.

The fact that the Plaintiff wrote a letter or letters to the Defendants and he believes they should have intervened is not enough to establish liability under §1983. *See Glasco v Prulhiere*, 2009 WL 54298 at 1(S.D.Ind. Jan. 8, 2009)("Even if (the plaintiff) wrote letters to these defendants, this fact alone is insufficient to support recovery from supervisory dependents."); *Diaz v McBride*, 1994 WL 750707 at 4 (N.D.Ind. Nov. 30, 2004) (holding that a plaintiff could not establish personal involvement, and subject a prison official to liability under section 1983, merely be sending the official various letters or grievances complaining about the actions or conduct of subordinates.); *Hanna v Lane*, 210 F.Supp. 32, 36 (N.D. Ill. 1985)(an administrator does not subject himself to §1983 liability merely by failing to respond to an inmate's letter); *Reed v Richards*, 1992 WL 396863 (N.D. Ind. Dec 31m 1992)(inmate could not subject prison official to liability by sending the official various letters and grievances complaining about the actions or conduct of subordinates).

The Plaintiff admits that he knew that neither Defendant Mathy or Hardy were responsible for approving religious diets because he "knew from previous prison transfers that all religious diets were screened by the prison chaplain." (Plain. Resp. [d/e 110], p. 6). In addition, he has presented no evidence that either Defendant received any of his letters during this time period and has presented no other evidence that the court could infer that either Defendant had any knowledge of his complaints prior to the time he received his vegan food trays. Therefore, Defendants Mathy and Hardy have established the absence of a genuine issue of material fact as to their personal responsibility for a violation of the Plaintiff' constitutional rights. The Defendants' motion for summary judgment is granted as to Defendants Mathy and Hardy. The Plaintiff's motion for summary judgment as to these two Defendants is denied.

The Plaintiff claims he did write a another letter on August 26, 2008 to both Chaplain Kennell and Food Service Manager Runyon. The Defendants deny that they ever received it. For the purposes of this dispositive motion, the court assumes that the Plaintiff did attempt to mail this letter. However, the Plaintiff did not follow the proper procedure to put the Chaplain on notice of his request for a religious diet. Instead, his letter was addressed to the Dietary Department. The Plaintiff also knew that Food Service Manager Runyon had no authority to approve a religious diet. Furthermore, there is no evidence that either Runyon or Kennell ever received this letter or knew about its contents. At most, the Plaintiff has shown that some unknown individual was negligent in handling his letter.

Therefore, the first evidence that Defendant Kennel knew about the Plaintiff's request

was when he received the Plaintiff's letter dated September 19, 2008. Defendant Kennel says he did not personally receive the letter until seven days later on September 26, 2008. The Plaintiff does not seem to dispute this allegation and therefore it is not clear whether the date on the letter was the date the Plaintiff put the letter in the institutional mail. Nonetheless, even if the court were to assume that Defendant Kennel did see the letter on September 19, 2008, the evidence shows he approved the diet seven days later on September 26, 2008. Defendant Kennel also sent the approval to Defendant Runyon on September 26, 2008 and this was the first day the Plaintiff received a vegan tray.

The court notes that the records from Pontiac Correctional Center all verify the vegan trays began on September 26, 2008. While the Plaintiff has claimed he did not receive the vegan trays until October 3, 2008, he has no evidence to verify that date and his own exhibits belie his claim. For instance, the Plaintiff filed another grievance on September 30, 2008 which indicates that he was receiving his religious diet on this date. The grievance claims the Defendants subjected him to cruel and unusual punishment by "refusing to answer my letters and grievances for 39 days before giving me my vegan diet tray." (Comp., p. 54). Since the Plaintiff was receiving his vegan trays, the only relief requested in the grievance is for the Defendants to be fired and for compensation. In addition, 39 days from the day the Plaintiff entered Pontiac would be September 26, 2008.

In summary, there is no evidence that Defendant Runyon had any responsibility for the approval of the Plaintiff's religious diet. There is no evidence that Defendant Kennel was responsible for any delay in receiving the religious diet. Instead, the evidence before the court demonstrates that Kennel received the Plaintiff's request sometime between September 19, 2008 and September 26, 2008. The Defendant approved the religious diet on September 26, 2008 and the Plaintiff received his first food tray on this day. Defendants Kennel and Runyon's motion for summary judgment is also granted as to the Plaintiff's claim that they violated his First Amendment rights. The Plaintiff's motion for summary judgment against these Defendants on his First Amendment claim is denied.

The court notes that in the Plaintiff's original complaint, he sued each of these Defendants in their individual capacities. The Plaintiff later amended his complaint to state an official capacity claim against the IDOC Directors Randle and Walker based on the policy of requiring inmates to reapply for their religious diets every time they are transferred to a new IDOC facility. *See* August 2, 2010 Case Management Order. The Plaintiff stated that he was not asking for damages from the IDOC Directors, but instead he was requesting injunctive relief.

Neither side has properly addressed this issue in the motions for summary judgment. The Defendants simply say that the policy does not place a substantial burden on inmates because the procedure is "straightforward." (Def. Memo, p. 8, d/e 127). While there is no evidence that any named Defendant caused the 39 day delay in approving the Plaintiff's religious diet, there is evidence that the Plaintiff wrote letters during this time frame asking for his religious diet. It is not clear if those letters were lost in the institutional mail, but it is clear that the Plaintiff did not properly address those requests to the Chaplain alone. As soon as the Plaintiff followed the

11

authorized procedure, he received his requested vegan diet tray in short order. The IDOC policy is "straightforward" and there is no showing in the record that the immediacy between notice and receipt of a diet tray is not typical at Pontiac and other IDOC facilities.

The court also notes that it is unclear whether the Plaintiff is even entitled to injunctive relief. He admits that he did receive his vegan diet at Pontiac Correctional Center. The Plaintiff has since transferred and it appears he may not be receiving vegan food trays at his new facility. However, the grievance forms submitted to the court indicate that the Plaintiff again failed to follow the IDOC policy to make his request. Therefore, based on the record before the court, Defendants Randle and Walker's motion for summary judgment on the Plaintiff's First Amendment official capacity claim is granted. The Plaintiff's motion for summary judgment on this official capacity claim is denied.

D. RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT (RLUIPA).

The court notes that the Seventh Circuit has held that a defendant is "shielded from monetary judgment in his official capacity under RLUIPA" and the court also has declined "to read RLUIPA as allowing damages against defendants in their individual capacities." *Nelson v Miller*, 570 F.3d 868, 885, 889 (7th Cir. 2009); *see also Maddox v Love*, --F.3d–, 2011 WL 3690049 at 5 (7th Cir. Aug. 24, 2011). Therefore, the Plaintiff can only seek injunctive relief against Defendants Mathy, Hardy, Kennell, Runyon, Walker and Randle. "A court's power to grant injunctive relief only survives if such relief is actually needed. *Nelson,* 570 F.3d at 882 "The necessary determination is that there exists some cognizable danger of recurrent violation, something more than a mere possibility..." *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953).

However, there is a more fundamental concern with respect to Defendants other than IDOC Directors Walker and Randle. There is no showing that any Defendant other than Walker and Randle are employed in capacities that would allow or authorize them to make or administer the religious diet policy for the IDOC. Therefore, summary judgment must be granted to these Defendants. As for IDOC Directors Randle and Walker, RLUIPA also requires a Plaintiff to demonstrate that the government placed a "substantial burden on the religious exercise of a person residing in or confined to an institution..." 42 U.S.C. §2000cc-1(a). As previously discussed, the Plaintiff has failed to demonstrate the IDOC policy requiring inmates to reapply for their religious diets every time they are transferred to a new IDOC facility places a substantial burden on inmates. Defendants Randle and Walker's motion for summary judgment on the RLUIPA claim is also granted. The Plaintiff's motion for summary judgment on his RLUIPA claim is denied.

**IT IS THEREFORE ORDERED that**:

**1) The Plaintiff's renewed motion for appointment of counsel is denied. [d/e 128]**

**2) The Plaintiff's motion for summary judgment is denied pursuant to Federal Rule of Civil Procedure 56. [d/e 124]**

3) Defendant Mahone's second motion for summary judgment and Defendants Hardy, Kennell, Mathy, Randle, Runyon, and Walker's motion for summary judgment are granted pursuant to Federal Rule of Civil Procedure 56. [d/e 100, 130] The Clerk of the court is directed to enter judgment in favor of the Defendants and against the Plaintiff pursuant to Fed. R. Civ. P. 56. The case is terminated. The parties are to bear their own costs.

4) If the Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the Plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.

5) The agency having custody of the Plaintiff is directed to remit the docketing fee of $350.00 from the Plaintiff's prison trust fund account if such funds are available. If the Plaintiff does not have $350.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the Plaintiff's trust fund account to the clerk of court each time the Plaintiff's account exceeds $10.00 until the statutory fee of $350.00 is paid in its entirety. The filing fee collected shall not exceed the statutory filing fee of $350.00.

6) The Plaintiff is responsible for ensuring the $350.00 filing fee is paid to the clerk of the court even though his case has been dismissed. Release from incarceration does not relieve the Plaintiff of his obligation to pay the filing fee in full. The Plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such change.

7) The clerk is directed to mail a copy of this order to the Plaintiff's place of confinement, to the attention of the Trust Fund Office.

Entered this 6th day of October, 2011.

s/Joe Billy McDade
_____
JOE BILLY MCDADE

UNITED STATES DISTRICT JUDGE